IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| PATRICIA GREEN, ) | Civil Action No. 3:08-370-SB-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

## ADMINISTRATIVE PROCEEDINGS

On September 20, 2004, Plaintiff applied for SSI and for DIB. Plaintiff's applications were denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held July 14, 2006, at which Plaintiff appeared and testified, the ALJ issued a decision dated January 19, 2007, denying benefits. The ALJ found, under the medical-vocational guidelines promulgated by the Commissioner, that Plaintiff remains able to perform work found in the national economy. See generally 20 C.F.R., Part 404, Subpart P, Appendix 2. On November 30, 2007, the Appeals Council denied Plaintiff's request for review, thereby making the determination of the ALJ the final decision of the Commissioner.

Plaintiff filed this action on March 4, 2008. The Commissioner filed an answer and the transcript on August 6, 2008. Pursuant to Local Rule 83.VII.04, Plaintiff's brief was due on September 8, 2008. Telephone calls were made to Plaintiff's attorney on September 9, 12, and 19, 2008 to remind him that the brief was overdue, but a brief was still not filed. On September 22, 2008, the undersigned issued an order allowing the Commissioner forty days to file a brief, as Plaintiff's counsel apparently had chosen not to file a brief. The Commissioner timely filed a brief on October 24, 2008. Plaintiff filed a brief on November 14, 2008. The Commissioner filed a motion requesting to file a supplemental brief in response to Plaintiff's untimely brief. This motion was granted and the Commissioner filed a supplemental brief on December 23, 2008.

## FACTUAL BACKGROUND

Plaintiff was forty-five years old as of her amended alleged onset date and forty-seven years old at the time of the ALJ's decision. She has a high school education and past relevant work as a housekeeper, cashier, and private sitter. Plaintiff alleges disability since August 25, 2004.[1]

## ALJ's FINDINGS

The ALJ found (Tr. 19-24):

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2008.

2. The claimant has not engaged in substantial gainful activity since August 25, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: diabetes mellitus (type I and II) with peripheral neuropathy and obesity (20 CFR 404.1520(c) and 416.920(c)).

---

[1]Plaintiff originally alleged an onset date of March 6, 2003, but amended it at the hearing to August 25, 2004. Tr. 241, 244.

2

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant is able to lift/carry up to 10 pounds, stand for 2 hours in an 8 hour workday, walk for 2 hours in an 8 hour workday, and sit for 6 hours in an 8 hour workday. She is unable to climb or operate foot pedals. The claimant has no other exertional or nonexertional limitations.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 29, 1959 and was 44 years old on the amended alleged disability onset date, which is defined as a younger individual age 45-49 (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled[,"] whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a "disability," as defined in the Social Security Act, from August 25, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## **STANDARD OF REVIEW**

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42

U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## MEDICAL EVIDENCE BEFORE THE ALJ

Prior to her alleged onset date, Plaintiff sought treatment from Dr. Alfredo Brand for lobular panniculitis[2] in March 2003. An excision biopsy was performed and medications were prescribed. Tr. 97-98. In April 2003, she sought treatment from Dr. Joseph Scuderi, an ophthalmologist. He noted that she underwent laser surgery two months previously for proliferative diabetic retinopathy of her right eye. She had 20/20 visual acuity in her right eye and 20/80 in her left eye. Tr. 119-120.

In May 2003, Plaintiff was examined by Dr. James Field. She reported she took insulin three times a day. Dr. Field diagnosed "reasonably well controlled" diabetes. He adjusted her insulin and other anti-diabetic medications. Tr. 171. In June 2003, Dr. Scuderi noted that Plaintiff had retinopathy and found 20/20 visual acuity on the right and 20/40 acuity on the left. He performed pan retinal laser surgery on her right eye again. Tr. 116.

On June 17, 2003, Plaintiff's sutures at her biopsy site on her left leg were removed and she was given medication refills. Tr. 169. In July 2003, a physician's statement submitted to the South Carolina Department of Social Services indicated that Plaintiff would be unable to work for more

---

[2]Panniculitis is "an inflammatory reaction of the subcutaneous fat which may involve the connective tissue septa between the fat lobes, the septa lobules and vessels, or the fat lobules." Dorland's Illustrated Medical Dictionary 1357 (30th ed. 2003).

4

than six months. Tr. 99. She continued to undergo treatment for lipdermatosclerosis with medications. Tr. 168. In August 2003, Dr. Scuderi treated Plaintiff for proliferative diabetic retinopathy. Her visual acuity was 20/25 in each eye. Tr. 114-115.

In October 2003, Plaintiff was examined by Dr. S. R. Mackay for complaints of pain in her left shoulder and arm. Dr. Mackay diagnosed tendinitis and prescribed medications. Tr. 166. In January and February 2004, Plaintiff sought care from John Bondra, a doctor of chiropractic medicine, for recurrent episodic cervical neuritis and brachial radiculitis in her left arm and shoulder. Tr. 159-162. On February 16, 2004, Dr. Scuderi noted Plaintiff had 20/25 visual acuity in each eye. Tr. 108-109. Plaintiff was examined by Dr. Field on March 4, 2004, who diagnosed "better controlled" diabetes and adjusted her medications. Tr. 159.

Plaintiff continued chiropractic treatment with Dr. Bondra in March and April 2004. Tr. 157-159. On April 29, 2004, Plaintiff complained to Dr. Fields of swelling in her face and feet. He noted her diabetes that was not well controlled and she had facial and foot edema. He adjusted her diabetes medications and prescribed medication to help with edema. Tr. 156-157.

Between June and August 2004, Plaintiff continued to receive chiropractic care with Dr. Bondra. Tr. 150, 152, 154-156. On June 17, 2004, Dr. Fields diagnosed "not well controlled" diabetes and facial edema and adjusted her medications. Tr. 156. Plaintiff complained to Dr. D. Greenberg of right shoulder pain on August 5, 2004. Dr. Greenberg diagnosed adhesive capsulitis in both shoulders and referred Plaintiff for physical therapy. Tr. 152-153.

In an undated letter, Dr. Field stated that Plaintiff was unable to work due to pain and swelling in her legs and feet. He also stated that she had a pigmented, indurated lesion on her left leg of unknown cause, treated without improvement since February 2003. He stated it was difficult

5

to know how long she would be unable to work because it depended on the cause of her condition and the treatment for it. Tr. 173.

On September 2, 2004, Plaintiff complained of persistent pain in her right shoulder. A physical therapist indicated there were inconsistencies with Plaintiff's active versus passive motion of her shoulder and opined that physical therapy would not be helpful. Dr. Greenberg noted that Plaintiff had tenderness over her cervical acromial arch. He diagnosed Plaintiff with tendinitis of her right shoulder and administered a steroid injection. Tr. 148.

On October 21, 2004, Plaintiff reported taking insulin in the morning and night, stated her blood sugars ranged from 40 to 346, and said she had two insulin reactions which were rapidly relieved by eating. Plaintiff said that Neurontin had not relieved her leg pain, and a steroid injection had not relieved her shoulder pain. Dr. Field noted that Plaintiff's diabetes was "not too well controlled." He adjusted her insulin and prescribed hydrochlorothiazide (an anti-hypertensive medication) and Neurontin. Tr. 147.

Plaintiff continued chiropractic care with Dr. Bondra in November and December 2004. Tr. 145. On December 16, 2004, Plaintiff reported to Dr. Field that she walked to the school bus twice a day, but did not do any other exercise. She reported improvement in leg pain with Neurontin. Again her diabetes was noted as not well controlled. Dr. Field continued Plaintiff's insulin and Avandia (an anti-diabetic medication). Tr. 144.

In January 2005, Plaintiff continued care with Dr. Bondra. Tr. 133-134. On January 13, 2005, Plaintiff reported to Dr. Field that she had gone to the emergency room previously due to back pain. She stated that her leg pain was the same. Dr. Field noted that Plaintiff had not been exercising

very much, diagnosed "maybe somewhat better controlled" diabetes, adjusted her medications, and recommended that she increase her exercise. Tr. 134.

Plaintiff continued treatment with Dr. Bondra in February and March 2005. Tr. 130, 132-133. On February 17, 2005, Dr. Field noted that Plaintiff's social situation was not good and she was under tremendous pressure. He diagnosed poorly controlled diabetes and adjusted her medications. Tr. 132. On March 31, 2005, Plaintiff reported more insulin reactions during the last month than she had previously; swelling in her face, arm, and leg on the right; and some pain. She reported gaining four pounds (increasing her weight to 248 pounds) even though she walked thirty-five minutes each day. Dr. Field's examination revealed symmetrical calf measurements, swelling on the right side of her face, two pigmented areas on each calf, decreased sensation to vibration and normal sensation to light touch and pin prick in her right foot, and no reflexes in her legs. He diagnosed somewhat better controlled diabetes and probable diabetic neuropathy, and adjusted Plaintiff's medications. Tr. 129-130.

On April 6, 2005, Dr. Peter Frank examined Plaintiff at the request of the Commissioner. Plaintiff reported swelling which inhibited her ability to work. Dr. Frank noted that Plaintiff had grade two to three diabetic retinopathy with 20/30 visual acuity on the left and 20/25 on the right. He found that Plaintiff was moderately obese, had minimal pretibial edema, and substantial edema near her right elbow. She had a ten percent reduction in all ranges of motion in her lumbar spine, which was in keeping with her age and weight. Dr. Frank found intact cranial nerves, equal deep tendon reflexes, and good pain sensation in both of her feet. A chest x-ray revealed that Plaintiff's cardiac silhouette was in the upper limits of normal. A right knee x-ray revealed minimal osteoarthritis. X-rays of her right shoulder and hand were normal. Dr. Frank diagnosed type one and

7

two diabetes mellitus, well-controlled minimal essential hypertension, moderate exogenous obesity, and edema of unknown etiology (probably aggravated by her diabetes). He opined that Plaintiff "would greatly benefit from vocational rehabilitation in a sedentary-type profession." Tr. 100-105.

In April 2005, Plaintiff received chiropractic care from Dr. Bondra. Tr. 127-128. On May 19, 2005, Plaintiff told Dr. Field that she had three hypoglycemic reactions, weight loss of three pounds, and elevated blood pressure. Dr. Field noted that her social situation had not improved. Plaintiff complained of swelling in her face, arms, and legs on the right. Dr. Field diagnosed diabetes that was "no better controlled." He adjusted Plaintiff's insulin and other anti-diabetic medications. Tr. 126-127

Additional chiropractic care was rendered by Dr. Bondra in June and July 2005. Tr. 125-126. On July 21, 2005, Plaintiff reported to Dr. Field that she was taking insulin, Avandia, and Glucovance, but her blood sugars constantly measured above 200. She reported weight gain of three pounds, elevated blood pressure, and swelling on the right side of her body. She said she had custody of her two grandsons. Dr. Field diagnosed diabetes that was not well controlled and adjusted her medications. Tr. 123.

On September 29, 2005, Dr. Scuderi diagnosed stable proliferative diabetic retinopathy, performed pan retinal laser surgery on her left eye, and found visual acuity of 20/25 on the right and 20/20 on the left. Dr. Scuderi wrote a letter to Dr. William Sheehey stating that Plaintiff had some active neovascularization in her left eye and he supplemented her pan retinal laser therapy under retrobulbar block. Tr. 112, 143. On January 12, 2006, Dr. Scuderi noted 20/20 visual acuity in each of Plaintiff's eyes. Tr. 106-107.

On January 19, 2006, Plaintiff stated she felt better without taking Avandia. She reported no insulin reactions, a weight loss of nine pounds, and frequent palpitations. Her right leg below the knee measured two centimeters less than her left leg. Dr. Fields noted leg edema and discoloration. He diagnosed moderately well-controlled diabetes and adjusted Plaintiff's medications. Tr. 121.

Plaintiff reported in March 2006 that she walked thirty minutes seven days a week and felt better in general without Avandia and Glucovance. Dr. Field noted that Plaintiff's diabetes was not as well controlled and adjusted her medications. Tr. 124.

## **MEDICAL EVIDENCE SUBMITTED TO THE APPEALS COUNCIL**

After the ALJ's decision, Plaintiff submitted additional evidence to the Appeals Council as discussed below. On July 30, 2006, Plaintiff was treated at the emergency room with medications for an allergic reaction which included hives or urticaria. Tr. 201-206. On August 10, 2006, she was treated with medications at Beaufort-Jasper-Hampton Comprehensive Health Services for urticaria, diabetes mellitus, and onychomosis (fungal infection of the nails). Tr. 177-178. On August 25, 2006, she was treated by Dr. Read Lewin for urticaria, diabetes, and hypertension. Tr. 293. She returned to Dr. Lewin for follow-up on August 31, 2006, at which time she reported no further whelps since stopping one of her medications. Dr. Lewin noted that Plaintiff had blood glucose levels of 180 to 200, decreased left eyesight, and leg edema. She was referred for allergy testing. Tr. 192.

On September 16, 2006, Plaintiff was treated at the emergency room for complaints of low back and leg pain since waking up that morning. Examination revealed pain to palpation of the spine, negative straight leg raising tests, decreased sensation, normal stability, normal muscle strength and tone, and normal neurovascular functioning. An x-ray of her lumbosacral spine revealed

9

multilevel degenerative disc disease. Muscle spasm was noted. Plaintiff was diagnosed with acute low back pain with radiculopathy as well as uncontrolled diabetes mellitus. Muscle relaxers and anti-inflammatory medications were prescribed. Tr. 230-237.

On November 29, 2006, Plaintiff was treated in the emergency room for complaints of low back and leg pain. She reported she took narcotic pain medication with no relief and was unable to "straighten up," bend, or change position. Plaintiff had abnormal palpation and range of motion of the spine, but normal stability, muscle strength and tone, and neurovascular functioning. A lumbosacral spine x-ray revealed multilevel degenerative disc disease with muscle spasm. Acute exacerbation of chronic low back pain was diagnosed. Percocet and Valium were prescribed. Tr. 222-229.

Plaintiff received treatment from Lee Chalmers, a physical therapist, on January 8, 2007 for low back pain. Mr. Chalmers noted that Plaintiff had lumbosacral pelvic girdle inflammation and administered therapy exercises. Tr. 209-210. Plaintiff was treated the same day by Dr. T. Robert Rhodin, an orthopedist, for complaints of low back pain and leg pain. She reported that she took care of a five and seven year old and went to physical therapy. Dr. Rhodin noted that Plaintiff was markedly stiff and had inflammation of the pelvic girdle with symmetrical normal stability and alignment. She had symmetrical reflexes and good dorsiflexion on the right compared to the left. Dr. Rhodin diagnosed lumbosacral dysfunction and recommended crutches to keep her off her right leg. Tr. 198.

Plaintiff underwent physical therapy on January 9 and 10, 2007. Tr. 208, 212. On January 16, 2007, Plaintiff reported she was not good and had low back and right hip pain. Two days later

10

she reported soreness in her feet and physical therapist Susan Kueustner assessed "L4 difficult to correct." Tr. 213.

On January 25, 2007, Plaintiff reported that her right leg was less tight and Ms. Kueustner noted that Plaintiff was ambulatory with crutches. Plaintiff demonstrated pelvic/sacral obliquities and continued therapy was recommended. Tr. 214, 221. On January 29, 2007, Dr. Rhodin noted that Plaintiff was doing better. He diagnosed low back pain and continued Plaintiff's physical therapy. Tr. 197. Plaintiff underwent physical therapy on February 12, 19, 23, 26, and March 1 and 5, 2007. Tr. 207, 214-216.

On March 5, 2007, Dr. Rhodin diagnosed low back pain and discomfort and recommended an MRI. Tr. 196. From March 5 to 19, 2007, she underwent additional physical therapy. Tr. 217-220. On March 5, Ms. Kueustner noted that Plaintiff had an "excellent response" to osteopathic techniques with improved flexibility. She also noted that Plaintiff continued to ambulate with crutches and was "pain free" forty percent of the time. Tr. 220. On March 8, Plaintiff reported she was ill and had to take Advil every day and Hydrocodone when her pain became more severe. She underwent physical therapy on two more occasions. Tr. 217-218.[3]

## **HEARING TESTIMONY**

Plaintiff testified at the hearing that she experienced pain in her feet and shoulder. She said she had diabetic retinopathy and peripheral neuropathy. Plaintiff alleged constant swelling in her feet and numbness and tingling in her hands. Tr. 246-251. Plaintiff stated she could not pick up heavy

---

[3]Additional records from Beaufort-Jasper-Hampton Comprehensive Health Services were submitted (see Tr. 179-191), but it does not appear that these are Plaintiff's records. First, although the names are similar, the last name on these records is spelled "Green," not "Greene." Further, a different address is listed, the age is different, and numerous medical pieces of information are different (including the patient's weight and whether the patient had diabetes).

objects and had difficulty handling coins, writing, and washing dishes. Tr. 252. She stated that her shoulder pain radiated into her back and caused difficulty bending. Plaintiff also stated that she had problems lifting with her right arm and had constant pain in her neck. Tr. 253-254. Plaintiff stated that she took Glucophage, Neurontin, Lasix, Advil, and Motrin without side effects. Tr. 248-250.

Plaintiff thought that she could walk and stand for fifteen to twenty minutes and could sit for thirty minutes with breaks due to discomfort in her legs. Tr. 254-255. She stated that she had custody of her two grandchildren (ages four and seven) who went to the Boys and Girls club and did chores at home such as washing dishes and vacuuming. Tr. 240, 245-246. Plaintiff testified that she prepared simple meals such as spaghetti, macaroni and cheese, or baked chicken. Tr. 256. She stated she swept or raked the area around her porch every day for two to three minutes. Tr. 256-257. Plaintiff shopped for groceries, but had difficulty carrying them. Tr. 257. She said she read magazines and the newspaper, went to church, and sang in the choir once a month. Tr. 257-258.

## **DISCUSSION**

Plaintiff alleges that: (1) Plaintiff's application for benefits should be remanded for administrative consideration of new evidence which was submitted to the Appeals Council; (2) the ALJ failed to evaluate Plaintiff's residual functional capacity ("RFC") as required by Social Security Ruling 96-8p; and (3) the ALJ failed to correctly assess Plaintiff's credibility. The Commissioner contends that the ALJ's decision is supported by substantial evidence.[4]

---

[4]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

(continued...)

A. Credibility

Plaintiff alleges that the ALJ failed to correctly assess her credibility. Specifically, she argues that the ALJ's description of the medical evidence is "dubious and very limited." She also argues that the ALJ did not apply the proper credibility standard. The Commissioner contends that the ALJ followed the required analysis and found that her subjective complaints were not entirely credible.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

Here, the ALJ merely stated:

---

[4](...continued)
Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

13

> After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

Tr. 23. It is unclear why the ALJ found that Plaintiff was not entirely credible, as there is no explanation for his finding. This action should be remanded to the Commissioner to assess Plaintiff's credibility pursuant to the applicable law and in light of all the evidence.

    B.    <u>RFC</u>

Plaintiff alleges that the ALJ erred in evaluating her RFC because he failed to properly consider her alleged limitations concerning the use of her upper extremities, in particular as to the use of her hands for handling and fine dexterity. She also argues that the ALJ failed to properly consider her back impairment and arthritis. Plaintiff claims that the ALJ failed to discuss how her specific impairments relate to specific functional limitations as required by Social Security Ruling 96-8p. The Commissioner contends that the ALJ properly evaluated Plaintiff's RFC.

The ALJ's RFC assessment should be based on all the relevant evidence. 20 C.F.R. § 404.1545(a). Social Security Ruling 96-8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." The RFC must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis...." SSR 96-8. The ALJ must discuss the claimant's ability to work in an ordinary work setting on a regular work schedule. <u>Id.</u>

Here, the ALJ does not appear to have properly considered Plaintiff's RFC. First, it is unclear whether he considered all of Plaintiff's alleged impairments including her non-severe impairments. "In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an

14

individual's impairments, even those that are not 'severe.'" SSR 96-8p. The ALJ accepted that Plaintiff had neuropathy as a severe impairment. Plaintiff testified that she had problems with lifting, writing, and picking up coins. Tr. 252. Plaintiff's coworker provided a statement that Plaintiff had problems with her right arm. Tr. 7. The consultative evaluation noted that Plaintiff had "substantial edema near the right elbow." Tr. 105. The ALJ, however, does not appear to have factored Plaintiff's hand/arm limitations into her RFC or explained why these limitations were not accepted. This action should be remanded to the ALJ to fully consider all of Plaintiff's impairments in determining her RFC. In doing so, the ALJ should also consider the evidence presented to the Appeals Council. The majority of this new evidence is from the period prior to the date of the ALJ's decision, it is new, and it appears to be material in that it indicates that Plaintiff had problems with her back which may have reduced her RFC. X-rays indicate degenerative disc disease, Plaintiff was prescribed pain medication and physical therapy for her back condition, and she was told to stay on crutches.[5]

## **CONCLUSION**

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to consider Plaintiff's credibility and RFC in light of all the evidence (including the new evidence submitted to the Appeals Council) and applicable law.

---

[5]The Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Secretary, Dep't of Health and Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991). Evidence is new if it is not duplicative or cumulative. Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990). Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. See Borders v. Heckler, 777 F.2d 954, 956 (4th Cir. 1985).

It is, therefore, RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and the case be remanded to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey
United States Magistrate Judge

September 1, 2009
Columbia, South Carolina